GIUSEPPE CARRANO ET AL. *vs.* JOHN W. HUTT.

Third Judicial District, Bridgeport, October Term, 1918.

RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

The refusal of the trial judge to permit counsel for the losing party to
    press certain claims of fact, relevant and material to the issue,
    upon the attention of the jury, because of his mistaken recollec-
    tion or belief that they were unsupported by any evidence, con-

Carrano *v.* Hutt.

stitutes reversible error; and this is especially true when, as in the present case, such refusal is emphasized and reinforced by an instruction in the charge to the same effect.

Where counsel during argument differ as to what the testimony was on a particular point, it is entirely proper for them, or either of them, to request permission to have it read; and this request should ordinarily be allowed, unless the court is entirely clear in its recollection of the evidence.

In the present case the parties were at issue as to the ownership and possession of a boat-load of potatoes, the determination of which depended upon whether one *P*, who admittedly bought the potatoes on Long Island, was acting for himself, as the defendant contended, or as the plaintiffs' agent, as they insisted. *Held* that the oral arrangement entered into between the plaintiffs for the purchase of the potatoes, the amount of money contributed by each, and other details of the transaction, might be shown by the testimony of the participants.

The strictest observance of the technical rules of evidence is hardly to be expected in the examination of witnesses who have but a scanty knowledge of the English language; and unless the record discloses that an unfair advantage was taken of this situation, the method followed will not afford a basis for a claim of harmful error.

A witness for the plaintiff testified that in August, 1917—the month in which the potatoes were purchased—one of the plaintiffs endeavored to sell potatoes to him, the witness. *Held* that such testimony was admissible as tending to prove conduct on the part of one of the alleged partners which was at once natural and probable.

Another witness for the plaintiffs testified that during August, 1917, he had seen the plaintiffs counting out money in a certain shop. *Held* that this was admissible in corroboration of the plaintiffs' testimony to that effect.

Evidence was received that a brother of one of the plaintiffs had loaned the latter $200 in August, 1917. *Held* that this was admissible in support of the plaintiffs' claim of contribution to the joint venture.

The defendant, a deputy sheriff, had attached the potatoes in a suit by *S* against *P*, and sought to show that *P* was in fact indebted to *S*. *Held* that such line of inquiry was not apparently relevant or material to the issues involved.

Having testified upon his direct examination that when he attached the potatoes the plaintiffs declared they belonged to *P*, but that later, after they had seen *P*, they claimed to own the potatoes themselves —the defendant was asked on cross-examination if he had ever told the plaintiffs' counsel about such declarations of ownership. *Held* that this was legitimate cross-examination, though not very

material, since the officer, as he said he supposed, had no right to divulge such information to plaintiffs' counsel.

The defendant offered to prove by the farmer who sold the potatoes to *P,* what occurred between them subsequent to the sale. *Held* that the record did not make it clear whether such evidence would have been relevant and admissible or not.

Evidence was received that *P,* while buying the potatoes for the plaintiffs, as they claimed, declared he was purchasing them on his own account. *Held* that this testimony was manifestly material and relevant to the issue.

Argued October 24th—decided December 17th, 1918.

ACTION in the nature of trover for the alleged conversion of a quantity of potatoes and the bags containing them, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the plaintiffs for $1,700, and appeal by the defendant. *Error and new trial ordered.*

*Charles S. Hamilton,* for the appellant (defendant).

*Philip Pond,* for the appellees (plaintiffs).

WHEELER, J. The plaintiffs sue the defendant to recover damages for a certain lot of potatoes and bags, attached by him as deputy sheriff under a lawful writ of attachment.

The issues raised under the pleadings were as to the ownership of these goods: whether in the plaintiffs, or in Pasquale DiPalma as the defendant claimed.

The plaintiffs claimed and offered evidence to prove that they employed Pasquale DiPalma to purchase potatoes for them on Long Island upon a commission of five cents a bushel, the potatoes to be transported to New Haven in a boat belonging to Andrea DiPalma; that Pasquale purchased for them 1,044 bushels of potatoes, together with certain bags, that these were transported in said boat to New Haven, and while upon

the boat in New Haven were attached by the defendant officer as the property of said Pasquale.

The defendant claimed and offered evidence to prove that said Pasquale was in fact the owner of these goods at the time of the attachment.

At the close of the evidence and during the argument to the jury, Mr. Pond, counsel for the plaintiffs, stated to the jury that there was no evidence whatsoever that the bags in which the potatoes had been placed had ever belonged to or were the bags of Pasquale DiPalma, and that the only evidence was that they were the bags of the plaintiffs.   Mr. Hamilton, counsel for the defendant, in his argument replying to this claim, stated that Exhibit 3 showed that the bags belonged to Pasquale DiPalma; the court said that that was a very improper remark, and that Mr. Hamilton should not continue to make that claim.   Mr. Hamilton excepted to the refusal of the court to permit him to make that claim, and requested permission to claim to the jury that not only Exhibit 3, but also the bags in which Mr. Ruland, the seller of the potatoes, had allowed Pasquale DiPalma to put a part of the potatoes, and which Pasquale did not return but for which he allowed Mr. Ruland to retain a part of the $100 deposited as collateral, was evidence that these bags belonged to Pasquale.   The court refused to allow counsel to make such claims, and stated that in the charge he should instruct the jury that there was no evidence whatsoever that any of the bags belonged to Pasquale, and the court subsequently so instructed the jury.

The court was in error in its recollection and understanding of the evidence.   Exhibit 3, which was the memorandum of purchase, recites: "Potatoes to be dumped into his bags," and it was a fair inference for a claim that "his bags" referred to Pasquale's bags.

Further, it appears in the finding that in addition to

the bags which were mentioned in Exhibit 3, Ruland, the vendor of the potatoes, had furnished to Pasquale "about 500 bags in which the potatoes were placed when delivered at the boat, on account of there not being bags enough at the boat in which to place the entire 1,000 bushels of potatoes"; and that Pasquale had deposited $100 in cash with Ruland to pay for these bags and for a case of eggs. This evidence justified the claim of defendant's counsel; and as this directly affected the issue of ownership, we cannot say that it was not harmful to have taken this from the jury.

Mr. Pond, the counsel for the plaintiffs, in his closing argument to the jury, stated that Mr. Ruland admitted that part of the money for the 1,000 bushels of potatoes was paid down at the dock. Mr. Hamilton, counsel for the defendant, objected and took an exception. Subsequently, at the close of the arguments, Mr. Hamilton asked the court for permission to have the attention of the jury called to the testimony of Mr. Ruland in this particular, but this permission was refused. The record shows that the counsel for the plaintiffs was in error in his statement of what Mr. Ruland had testified to. He persisted in his claim after exception had been taken, and the ruling of the court followed.

The matter affected the question of ownership, and the jury were liable, in view of the court's approval, to accept this as the testimony of Mr. Ruland. Under these circumstances it was entirely proper for counsel for the defendant to request permission to have the testimony read. Unless the court's recollection was clear, it would have been the better course to have had the testimony read. Had this course been taken, the fact would have appeared. We cannot say that substantial error may not have been committed in this ruling.

We do not think any useful purpose will be served by

referring specifically to the manner in which several of these rulings were made by the court. They tended strongly to indicate the viewpoint of the court, but that we do not find error. The error consisted in refusing to permit counsel to make legitimate claims, and in accompanying that refusal with remarks which unduly criticised the counsel and restricted his rights as an advocate, all of which tended to prejudice his client's cause before the jury.

Some of the rulings on evidence may arise on the new trial, and we will briefly refer to them.

The testimony of Andrea DiPalma, of Amore, and of Giuseppe Carrano, in which they gave the details of the arrangement which the plaintiffs claim to have made between themselves for the purchase of the potatoes, was excepted to by the defendant. The arrangement made was not written down, and we know of no way in which it could have been proved except by the statement of the participants of what was said and done. In eliciting this testimony there was not the strictest observance of the technical rules of evidence, but this was inevitable in view of the limited understanding of the language by the witnesses and the difficulty of extracting any statement from them. The record does not indicate that unfair advantage was taken of this situation, nor does it afford a basis for a claim of harmful error.

The testimony of Brownstein, that Andrea DiPalma endeavored to sell him potatoes in August, 1917, was admissible as proof of conduct on the part of one of the claimed partners at once natural and probable.

So the testimony of Palumbo, that he had on last August seen these plaintiffs counting out money in Andrea DiPalma's shop, tended to corroborate their statement that they then counted out the money used in the partnership.

The testimony of Salvator Carrano, that in the fore-part of August he had loaned his brother, one of the plaintiffs, $200, was admissible in support of his claim that he had put certain moneys into the partnership.

The questions asked of Douglass and Schiavoni by defendant's counsel, as to the indebtedness of Pasquale to Schiavoni for credit furnished him in buying potatoes, do not appear to have been relevant or material to the issues here involved.

Mr. Hutt, the defendant, called as a witness in his own behalf, testified as to making service of the writ, and of the attachment, and of the declarations of the plaintiffs that Pasquale DiPalma was the owner of the potatoes, and that they made no claim that Pasquale DiPalma was not the owner until after he, Pasquale, had come and talked with them. Upon cross-examination he was inquired of as to his conversation with the attorney for the plaintiffs, and as to the necessity of his protecting himself by a bond in making the attachment, and of his saying, later on, that he was going to hold the potatoes and that he had his protection in writing. Against the objection and exception of the defendant, he was asked if he had said a word at any of these times about any declarations made to him by the plaintiffs, or any of them, as to the ownership of the potatoes. This was clearly legitimate cross-examination. It was not especially material, for obviously deputy sheriff Hutt was correct in his idea that he had no right to divulge such information to the counsel for these plaintiffs.

The defendant's offer to prove by Ruland what had occurred between him and Pasquale DiPalma subsequent to the sale of these potatoes, may or may not have been admissible. It depended on its remoteness and upon its relevancy to the subject-matter of the sale. The record does not give this information. If

its purpose was to present the declarations of Pasquale made at that time concerning the subject-matter of the sale and the ownership of the potatoes, the offer should have been permitted.

Upon the defendant's claim, Pasquale was the owner; upon the plaintiffs' claim he was the general agent of the plaintiffs in this transaction. Douglass testified that on August 11th Pasquale came to him on Long Island where he was digging potatoes. He was then inquired of as to what occurred. This was claimed to show that Pasquale then declared he was buying potatoes for himself. This occurred when Pasquale, according to the claim of the plaintiffs, was engaged as their agent in buying potatoes. The evidence was manifestly material and relevant.

There is error and a new trial is ordered.

In this opinion the other judges concurred.