ROYAL SUNDRY COMPANY, INC. *v.* RAILROAD SALVAGE OF CONNECTICUT, INC.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1276

Argued November 17, 1982—decided August 5, 1983

*Edwin L. Doernberger,* for the appellant (defendant).

*Michael Perzin,* with whom, on the brief, was *John J. Resnick,* for the appellee (plaintiff).

PER CURIAM. The plaintiff instituted this action seeking to recover lost profits on merchandise alleged to have been misdelivered to the defendant and subsequently sold. The plaintiff is a wholesaler to drugstores of miscellaneous sundries. The defendant is also a seller of miscellaneous merchandise purchased in odd lots which it offers for sale at discount prices in its retail

stores. In April of 1978, the presidents of both corporations met with representatives from Ketchum Distributors, Inc., which was closing one of its wholesale divisions in Columbus, Ohio.

At the Ohio meeting, the plaintiff and the defendant negotiated the purchase from Ketchum of the division's remaining inventory, valued at approximately $170,000, at 27 percent of the wholesale cost. An arrangement was made whereby the plaintiff's president would draw up a list indicating that portion of the merchandise he desired to buy, which he anticipated would comprise about 10 percent of the inventory. The defendant agreed to purchase the rest. The goods were to be shipped separately to each corporation.

When the plaintiff's goods arrived on May 11, 1978, some of the merchandise was missing. In response to the plaintiff's inquiry, Ketchum stated that the missing items were sent to the defendant by mistake. The plaintiff notified the defendant of this alleged error and sent a letter itemizing the goods claimed to be missing from its shipment. Despite the fact that the shipment was incomplete, the plaintiff paid Ketchum $8726.09 for the entire amount of invoiced goods by a check dated May 17, 1978.

The defendant paid Ketchum $47,919.33 for its invoiced goods by check dated May 19, 1978, prior to receipt of the goods. When the merchandise arrived a month later, the defendant's employees checked the goods as they were unloaded against the items listed on the invoices accompanying the merchandise. According to the defendant, the items received corresponded to those listed on the invoices sent with the goods.

In July, 1978, the plaintiff took orders for the goods bought from Ketchum, including those allegedly misdelivered to the defendant. The plaintiff, however, never received the missing goods from the defendant

and was therefore unable to complete their sale. The present suit was brought to recover the profits lost on the orders which the plaintiff was therefore unable to fill. After a trial, the court rendered judgment for the plaintiff, from which the defendant has appealed.

The defendant claims that the plaintiff failed to establish a legal relationship between the parties which would obligate the defendant to pay for any damages suffered by the plaintiff. In its complaint, the plaintiff alleged: (1) that it purchased personal property from the Forchheimer Division of Ketchum, Inc.; (2) that this property was delivered in error to the defendant; (3) that the plaintiff notified the defendant and demanded delivery of the property; (4) but that the defendant refused to return the goods. The cause of action thus pleaded is that of conversion.

"Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. *Moore* v. *Waterbury Tool Co.,* 124 Conn. 201, 199 A. 97 [1938]." *Devitt* v. *Manulik,* 176 Conn. 657, 660, 410 A.2d 465 (1979). In order to prevail, the plaintiff must prove that it had title in the misdelivered goods superior to the defendant's title in the same goods. *Devitt* v. *Manulik,* supra, 662. This it did not do. With respect to the bulk of the property in question, the record indicates that Ketchum Distributors, Inc., invoiced and delivered those goods to the defendant, who then paid for them. Moreover, the goods were not only invoiced to and paid for by the defendant, but the defendant had physical possession as well. Thus, as between the plaintiff and the defendant, the defendant had superior title to the invoiced goods. Accordingly, there is error to the extent that damages were awarded in connection with those goods.

The invoiced goods paid for by the defendant, however, did not include a batch of candles which was listed by the plaintiff as part of the property missing from its shipment. The documentary evidence submitted by the defendant indicates that the defendant did not receive these goods. The plaintiff's president, however, testified that he saw the candles at the defendant's warehouse when he went there in an attempt to retrieve his missing goods. Where testimony is conflicting the trier may choose to believe one version over the other. *Cappiello* v. *Haselman,* 154 Conn. 490, 496, 227 A.2d 79 (1967). The trial court found that the merchandise was delivered to the defendant. We conclude that there was sufficient evidence for the trial court to find the defendant liable with respect to these candles.

The defendant's remaining claims of error pertain to the issue of damages. The first claim is that the trial court erred in allowing the plaintiff's president to testify regarding purchase orders taken for the resale of the goods in violation of the best evidence rule. The plaintiff's president testified that it was his custom to conduct shows where he displayed samples and pictures of the merchandise to be sold. Customers would then order goods based on these displays. He further testified that at his July, 1978 show, he took orders for all the goods he had purchased from Ketchum, including those he expected to receive from the defendant. Although he could not remember the specific prices he charged, he stated that his minimum sale price for any item would be the wholesale cost plus 10 percent for shipping.

The best evidence rule deals with documentary evidence and requires, absent an adequate explanation as to its whereabouts, the submission of the original document when a party attempts to establish the existence or exact terms and content of that document. *State*

v. *Moynahan,* 164 Conn. 560, 583, 325 A.2d 199 (1973). This was not the case here. The plaintiff sought to prove through the testimony of its president that it had contracted to sell the goods in question through what occurred at the July show. "Where one testifies to what he has seen or heard, such testimony is primary evidence regardless of whether such facts are reduced to writing." *State* v. *Moynahan,* supra, 583. Since there was no offer at trial of documentary evidence, we conclude that the best evidence rule is simply inapplicable in the present case.

The defendant further claims that the testimony relating to the purchase orders was inadmissible as hearsay. We disagree. The testimony as to statements made by customers was offered solely to prove the acceptance of the plaintiff's offers of goods for sale, and not to prove the actual content of the customers' statements. "Testimony of the contents of an utterance, offered only to prove that it was made, is not hearsay." (Citations omitted.) *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 80, 157 A.2d 241 (1959).

The defendant's next claim is that the admission of the testimony regarding the purchase orders violated its constitutional right of cross-examination under the sixth amendment to the United States constitution. This amendment applies specifically to criminal prosecutions and not civil actions and is therefore inapplicable in this case.

The defendant also claims that the plaintiff did not prove its damages with reasonable certainty. The plaintiff's cancelled check indicates Ketchum was paid the total amount listed on the master invoice sent with the plaintiff's shipment of goods. This invoice discloses that $172.73 was paid for the candles which amounts to 27 percent of their wholesale cost of $639.74. The

testimony of the plaintiff's president as to the resale of the goods at a specified price above its wholesale cost presented a factual issue based on the credibility of the witness which is for the trier to determine. *Piantedosi* v. *Floridia,* 186 Conn. 275, 277, 440 A.2d 977 (1982). We conclude there was sufficient evidence by which the court could calculate damages.

The defendant claims two further corrections are required in the method used to award damages. Both parties agree that the plaintiff's cost of purchasing the goods was erroneously included in the trial court's final award since the plaintiff's claim was for lost profits only. The defendant also claims that an additional 10 percent of the wholesale cost, representing the plaintiff's freight costs, was incorrectly added to the damages. Shipping costs are considered a cost of operation and are not added to the sale price in determining the net profit figure. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 275, 320 A.2d 811 (1973). Since the freight costs of 10 percent offset the claimed profit of the same amount, the appropriate method for calculating the damages here is the wholesale price of $639.74 less the plaintiff's cost of $172.73 which results in an award of $467.01.

There is error in part and the judgment is set aside with direction to render judgment for the plaintiff to recover of the defendant damages of $467.01.

DALY, BIELUCH and COVELLO, Js., participated in this decision.