## COELM *v.* FRANK IMPERATO
## (8759)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued June 11—decision released September 4, 1990

*Joshua A. Winnick,* with whom, on the brief, was *Edward B. Winnick,* for the appellant (plaintiff).

*Frank B. Velardi, Jr.,* for the appellee (defendant).

FOTI, J. The plaintiff, Coelm, a Connecticut partnership, brought this action to recover the balance due on the defendant's account with the plaintiff's predecessor in interest, Elm City Filling Stations, Inc. (Elmco), after Elmco assigned its accounts receivable to the plaintiff. The plaintiff appeals from the trial court's judgment, after a court trial, for the defendant. On appeal, it makes four claims arguing that the trial court improperly (1) precluded testimony, (2) refused to grant a continuance, (3) acted prejudicially, and (4) denied its

motion for a new trial. Because the first issue raised by the plaintiff is dispositive and leads us to reverse the trial court's decision, it is unnecessary to reach the remaining issues.

The facts are not in dispute. The complaint in this collection action alleges that in late 1982 Elmco delivered goods, wares, materials or merchandise valued at $116,415.55 to the defendant and that Elmco was dissolved and its accounts receivable were assigned to the plaintiff on or about January 1, 1983. The complaint further alleges that, despite the plaintiff's demands, the defendant has failed to pay all but $2300 of the amount due and owing.

At trial the plaintiff presented two witnesses. The first witness, Mary Ann McIntire, was the bookkeeper and the person in charge of Elmco's office. She testified that the debt owed Elmco by the defendant was $75,393.39.

The second witness, Sidney J. Horton, was the president of Elmco and a member of its board of directors before that company was dissolved. Horton testified that he was the president, but not a shareholder of Elmco, and that he had presided over that company's dissolution in January, 1983. The defendant objected to Horton's testimony at this point and argued that because Horton had not been a shareholder in Elmco, he was not qualified to testify. The court overruled this objection and allowed Horton to continue testifying.

Horton then testified that when Elmco was dissolved all of its assets were sold off, except the accounts receivable. He stated that his wife, Arnold Alderman and Alderman's wife had formed Coelm, to which Elmco's accounts receivable were assigned. The defendant again objected to Horton's testimony and moved that it be stricken because Horton owned neither Elmco nor Coelm. At the court's suggestion, the defendant rephrased his argument and objected on the ground

that Horton's testimony was not the best evidence.[1]
The defendant asserted that the "certificate of pur-
chase [and] the minutes of the corporation reflecting
[the purchase]" would be the best evidence to prove
that Elmco's accounts receivable had been assigned to
Coelm. The court sustained the defendant's second
objection and, in spite of repeated efforts by the plain-
tiff to explain that Horton's firsthand knowledge was
a sufficient basis for his testimony,[2] the court struck

[1] After the defendant's second objection, the following exchange took
place:

"Mr. Lasala: It is my point, Your Honor, that the witness as the presi-
dent of the company cannot testify as to any corporation—

"The Court: Is your objection it is not the best evidence?

"Mr. Lasala: That's correct, Your Honor.

"The Court: On that ground it is sustained.

"Mr. Winnick: Your Honor, may I be heard on that.

"The Court: You can be heard but I very seldom change my mind.

"Mr. Winnick: I'm not sure I understand what—there was a motion to
strike testimony. What portion of the testimony has been stricken?

"The Court: The last question.

"Mr. Winnick: The entire last question?

"The Court: Yes.

"Q. Mr. Horton, as president of Elm City Filling Station[s], Inc., did there
come a time when Elm City dissolved as a corporation?

"A. Yes.

"Mr. Lasala: Same objection, Your Honor.

"The Court: Mr. Horton, wait a second so that Mr. Lasala can get his
objection in, okay. The same grounds, I take it.

"Mr. Lasala: Same grounds.

"The Court: Same ruling."

[2] The following colloquy occurred:

"Mr. Winnick: Exception, please. May I inquire as to why as the presi-
dent of the corporation he cannot testify as to the—

"The Court: The court seldom answers questions. It just makes decisions.

"Mr. Winnick: Your Honor, seeking to understand the scope of the court's
ruling, is it the court's ruling that this witness as president of the corpora-
tion cannot testify as to any of the historical events of the corporation?

"Mr. Lasala: That's correct. The most credible evidence in this matter,
the best evidence in this matter would be a certificate of purchase, the min-
utes of the corporation reflecting this and this witness not as a shareholder
cannot testify to it.

"The Court: The court ruled the best evidence would be the corporation
records.

Horton's testimony on the ground that the best evidence would be the corporation's records.

After a short recess the plaintiff moved for a continuance to allow it to collect certain corporate records. The defendant again objected and the court denied the plaintiff's motion on the grounds that "[e]verybody said they were ready."

When further questioning of Horton resulted in the same objections and the same rulings, the parties rested, and the court granted the defendant's request for a directed verdict,[3] rendering judgment for the defendant, on two stated grounds. The first ground

"Mr. Winnick: Would be the corporation records.

"The Court: That's what I have ruled."

At another time the plaintiff specifically requested:

"Mr. Winnick: Thank you, Your Honor. The witness has testified that he served as a member of the board of directors and had personal knowledge of the acts that the board took. The best evidence rule is a rule of preference, not one of exclusion. It prefers proof by original documentation but will accept oral evidence if necessary. I have just quoted some language from the Handbook of Connecticut Evidence, Tait and LaPlante, page 300, Section 10.7, the first full paragraph on that page. I would submit to the court that in this instance the corporation documents not being here, they are not necessary. This witness has testified that he did have personal knowledge of the acts of the board. He is fully able to be cross-examined on any of these acts. The question as to the admissibility of this evidence is not an issue here. It would go to the weight of this evidence in light of the fact [that] there would be no corroboration by the corporation documents. If Your Honor should find that he is not believable as to the acts taken, then we have—we haven't met our burden. That shouldn't preclude Your Honor about entertaining what acts the board of directors took and allowing the plaintiff to proceed to put on his case.

"Mr. Lasala: I stand by Your Honor's initial ruling, the best evidence rule. The fact of the matter is there are no corporation documents here, which are the best evidence. There's no agreement to purchase, there's nothing here indicating assignments. This man was not a shareholder of the company. Whatever he can say is as a member of the board of directors.

"The Court: I have ruled, gentlemen. Thank you."

[3] The court treated the "motion for directed verdict" in this court case as a motion for judgment rather than a motion to dismiss, since both parties had rested.

stated by the court was that the plaintiff failed to prove any relationship between itself and the defendant, Frank Imperato, or between Frank Imperato and Frank's Gas and Service Station.[4] The court's second stated ground was that the plaintiff failed to prove that the debt had been assigned from Elmco to the plaintiff, Coelm.

As defined by our Supreme Court, the best evidence rule forces a party to produce the original writing, if it is available, when the terms of that writing are material and must be proved. *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 10, 513 A.2d 1218 (1986); see also C. McCormick, Evidence (3d Ed. 1984) § 230. "The best evidence rule typically applies when attempting to prove the contents of ' "instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights." ' *Brookfield* v. *Candlewood Shores, Estates, Inc.*, supra, 10–11, quoting C. McCormick, supra, § 231. The ' "basic premise justifying the rule is the central position which the written word occupies in the law." ' *Brookfield* v. *Candlewood Shores Estates, Inc.*, supra, 10, quoting C. McCormick, supra." *Morales* v. *Saint Francis Hospital & Medical Center,* 9 Conn. App. 379, 382, 519 A.2d 86 (1986).

The best evidence rule is not applicable to this case. "Where one testifies to what he has seen or heard, such testimony is primary evidence regardless of whether such facts are reduced to writing. While recordings might be more accurate and reliable evidence under ordinary circumstances than testimony from memory, the latter is not rendered incompetent by the fact of the existence of the former." *State* v. *Moynahan,* 164

---

[4] Paragraph one of the complaint states that the items were "bargained, sold and delivered . . . to the defendant Frank Imperato, dba Frank's Gas and Service Station." The pleadings do not require that a relationship be shown between Frank Imperato and Frank's Gas and Service Station.

Conn. 560, 583, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

In the matter at hand, Horton, as president of Elmco, could testify as to corporate acts done by him, or in his presence. Such testimony would be primary evidence. Under the present circumstances, Horton's testimony as to the dissolution of Elmco and its assignment of its accounts receivable to Coelm was competent evidence. See *Royal Sundry Co.* v. *Railroad Salvage of Connecticut, Inc.,* 39 Conn. Sup. 430, 434, 466 A.2d 340 (1983). The existence or exact terms and contents of the corporate records were not in issue. The corporate documents were only collaterally involved. The best evidence rule does not apply where the contents of a writing are only collaterally involved. C. Tait & J. LaPlante, Connecticut Evidence § 10.9.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.