[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has brought suit against the defendants in a complaint containing nine counts. In the first count it alleges: that it is a corporation engaged in general contracting, and that the defendant is a limited partnership of which the named defendant Peter Leepson was the general partner, agent and employee; that the parties entered into a CT Page 1773 contract included revisions and change orders; that the plaintiff completed all the work; and that after demand, the defendants Peter Leepson and the partnership refused to pay the plaintiff the balance due of $85,432.00 for all work completed and therefore they have breached the contract. Count two repeats the allegations of the first count and alleges that Peter Leepson refused to pay the balance due and had breached the contract. Count three repeats the allegations of count one and alleges that under the contract the defendants agreed to pay utility costs incurred as of the date of substantial completion in the amount of $12,561.14, which they now refuse to do, constituting a breach of contract. Count four repeats the allegations of count three against the defendant Leepson. Counts five and six allege unjust enrichment against the respective defendants Leepson and North Morningside Associates Limited Partnership, by reason of their failure to pay the balance due on the contract. Counts seven and eight allege unjust enrichment of the respective defendants by reason of their failure to pay the utility costs. Count nine alleges a fraudulent conveyance by Peter Leepson to his wife Anne of premises known as 37 Green Acre Lane, Westport, Connecticut and also premises known as 1 Nutmeg Lane, Westport, Connecticut. The defendants' answer is a general denial of all nine counts.
The facts are found as follows: the parties did enter into a contract dated June 8, 1984 for the construct on of an office complex known as "Number One Morningside Office Complex" located at Post Road East, Westport, Connecticut. Attached to the contract were the specifications containing general and special conditions, and the designs prepared by the defendants' architect. The contract is the "American Institute of Architects Standard Form of Agreement."
In issue are eight charges for extras as follows. Change Order No. 5 for: (1) services for 1 surveyor for restaking building lines $3,312.00; (2) furnish concrete forms and reinforcing for proper alignment of garage wall $6,032.00; (3) additional layout was required because of discovery of dimension and layout differences $12,600.00; (4) cost of deceleration caused by dimension and layout differences slowing the fast track system of construction, $15,000.00, making a total of $36,944.00. Change Order No. 12: (1) additional costs to coordinate varying depths of pier column footings and pad walls $3,588.00, pier footings $507.00; rear west wall Building C $3,110.00, together with contractors overhead and fees $1080.00, a total of $8,285.00. Change Order No. 21, new trusses, a total of $448.00 Change Order No. 27 for furring and removal of furring in Building "A" for firehose cabinets and installation of fire stops, and furring on Building "B", including contractor's fee of 12%, a total of $7,975.00. CT Page 1774 Change Order No. 30: for revisions to structural steel for an Atrium, a total of $4,602.00. Change Order No. 32 for additional work for the installation of a smoke detector, a total of $1,128.00. Change Order No. 33: for extension of a wall behind Behind Building "A" $3,394.00; extra work in the elevator and elevator shaft $3,861.00; six additional metal doors and frames $2,277.00;.handrail at stream $4,194.00; ten new trusses $506.00; revision to truss design and additional trusses $8,074.00 and revisions to storm sewers because of conflicting elevations $2,744.00, making a total of $25,050.00. Lastly, a charge for electrical power after a Certificate of Substantial Completion was delivered to the plaintiff, in the sum of $12,561.14. The eight items total $85,432.00, which the plaintiff seeks to recover with interest. The defendants' answer is a general denial of the allegations of the nine counts of the complaint, as hereinbefore stated.
The evidence discloses that all of the work and supply of materials contained in the eight items were furnished to the project and accepted by authorized personnel of the defendant. However, the defendant claims that the eight items were not extras and were required to be performed and installed by the contract, plans and specifications. The project consisted of three buildings and a garage. The plaintiff had his superintendent Shenowerth on the job at all times as did the defendant, who also kept his superintendent Tiburzi there at all times. The items were charged at their lump price of cost plus unit price, together with an overhead charge of 15% and a profit charge of 12%, which the contract provided for. Section 12.01 of the specifications provides that bills for extras will be allowed where the work is ordered in writing, however, it goes on to provide that verbal orders will be considered when accompanied by a written order from the architect, countersigned by the authorized agent of the owner. Section 12.3.1 of the "General Conditions of the Contract" provides that the additional costs shall be submitted to the architect in writing within twenty days of the occurrence of the event, giving rise to the claim, and before proceeding with the work and requires an authorized change order. As previously stated, there are change orders executed by the owner's agent and the architect, however, their dates do not always meet the requirements of the two aforementioned paragraphs of the contract. The defendant's project manager, Tiburzi never saw the standard ATA change order form on this project. The layouts and site work were done by John Braun, the plaintiff's employee. He worked off the base line established by the defendant's surveyor of the project, whom the plaintiff hired to lay out the base line from which Braun made all his layout measurements for the buildings. The defendant's agent Spizzo subsequently discovered that the east wall of the garage was CT Page 1775 within the mandated set-back line of fifteen feet after approximately twenty percent of the wall had been poured. In =fact the parties, in the interest of completing the project speedily and efficiently, developed a procedure, participated in by Tiburzi for the defendant, Shenowerth for the plaintiff and Parisot for the Architect, all duly authorized, whereby, when a event occurred giving rise to an extra they would orally agree on the work to be done that it should commence immediately and the paper work would be subsequently completed in accordance with the requirements of the contract and specifications. Thirty-three such charges requiring extra work were handled using that procedure and seven such changes are the only ones in issue. The other twenty-six have been accepted by the defendant and architect and are paid. The eighth claim herein is not a change order, but is a claim under the contract for electricity furnished after the issue of a "Certificate of Completion."
The first issue to be decided is whether the failure to follow the requirements of the specifications 12.01 and 12.3.1 of the "General Conditions of the Contract" are fatal to the plaintiff's demands for the seven claims for extras. The defendant claims that the extras are not recoverable under the contract since they were rejected by the architect whose decision is binding upon the parties. The defendant's also raise the issue that the paragraph 12.3.1 of the General Conditions provide that "[I]f the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the work. . ." No such claim will be valid unless so made. The defendant's further cite 12.01 of the Specifications to the effect that "A. Bills for extras will be allowed only when work is ordered in writing. No bills based on verbal orders will be considered by the Architect unless accompanied by written order from the Architect countersigned by an authorized agent of the owner. Applications for extras shall be submitted not later than one week from the date of such extra work is discussed, contemplated or requested. No list of extras will be considered later or at the end of the project. Extras must be kept current and approval obtained as the work progresses." "Provisions in a written contract requiring written orders for changes in the work or for extra work may be waived by the parties so that the owner becomes liable for changes or extras done by oral direction" Von Langendorff v. Riordon, 147 Conn. 524,528 ". . . The provisions of a written contract can be waived by a subsequent oral agreement." General Electric Supply Co. v. SNET Co., 185 Conn. 583, 604 "Direction by the plaintiff to Condon for the performance of work not called for CT Page 1776 by their contract are necessarily and of themselves a waiver of the requirement for written approval" Wexler Construction Co. v. Housing Authority, 144 Conn. 187, 193. "the parties to a written contract. . . are as free to alter it after it has been made as they were to make it. . . To this end oral agreements will be as effective as written ones. . . and implied agreements satisfactorily established will have all the force of express ones" O'Loughlin v. Poli, 82 Conn. 427, 432 "The parties to a written contract. . . are as free to alter it after it has been made as they were to make it and all attempts on their part by its terms to tie up their freedom of dealing with each other will be futile'. . . and hence the general rule is stated to be that despite a provision in the contract that it may lot be changed except in writing, a oral agreement modifying its terms will be given effect. . ." Blakeslee v. Water Commissioner,121 Conn. 163, 182. "An existing contract may be modified or abrogated by a new contract arising by implication from the conduct of the parties." Malone v. Santora, 135 Conn. 286,292. See Gyro Brass Mfs. Corp. v. United Automobile Workers,147 Conn. 76, 80; Hess v. Dumouchel Paper Co., 154 Conn. 343,348. "in order to prove a contract has been modified the party asserting the modification must show mutual assent to its meaning and condition." First Hartford Realty Corp. v. Ellis,181 Conn. 25, 33. "Whether the parties intended to modify their contract is a question of fact." Three S Development Co. v. Santore, 193 Conn. 174, 178. The evidence is clear that Tiburzi, Parisot and Shenowerth agreed that the plans and specifications were not complete and in some respects vague and so they agreed to make changes on the job to speed the work and they did in fact make such changes orally so that the contractor could continue to work and in order to speed up the completion of the project. In fact thirty-three change orders were made by the three persons mentioned, orally and not within the time limits hereinbefore described as contract and specifications requirements. Twenty-five of those were recognized, accepted by the defendants and paid. A new contract arose by implication from the behavior of the parties, permitting oral changes in the project and submission of the extras in writing at later dates without limiting those dates. The defendants by their acceptance and payment of twenty five such oral changes assented to those changes, and waived his right to insist on the provisions of the contract. The parties effectively modified their contract to allow oral changes, to be made immediately and the papers to be submitted later without limitation as to date.
Tiburzi's authority to act for the defendant Leepson is shown by the defendant's testimony that he conferred with him at the latter's office every morning and Tiburzi would tell Leepson what he intended to do on the job and the daily status CT Page 1777 of the project. They would meet again daily at 3:30 or 4 P.M. when he would again tell Leepson what was going on at the site. Leepson stated; "He was really to be my eyes at the site." With all of Tiburzi's information Leepson accepted twenty-five oral changes that did not comply with contract and specifications which was indicative of the authority given to Tiburzi to make oral changes and accept change orders that were not within the time limits of the contract and the specifications. The authority of Parisot, the architect on the job is also derived from the defendant Leepson's actions with respect to the twenty-five accepted change orders. Failure on Leepson's part to deny the authority of both Tiburzi and Parisot when the twenty-five accepted oral change orders were made and his silence when it became a duty to deny their authority constituted consent Blakeslee v. Water Commission, supra 179.
 II
The first disputed change order is identified as "proposed Change Corder #5" and contains five items of extras. The change order was required when it was discovered that a portion of the east wall of the garage was poured within the fifteen foot set-back line required by the Town of Westport. Leonard the surveyor hired for the project by Leepson was also hired by the plaintiff to lay out the base line from which all measurements for the buildings were laid out. When the error was discovered Leonard was brought back to the premises and confirmed the error. Thereafter the architects and the surveyor had to change the shape of the buildings and their layout. Leonard did confirm that, the plaintiff's layouts were correct and it follows that the error was not caused by the plaintiff but lies between the architect's design and layouts and the surveyors measurements, and that the defendant is therefore liable for the extra charges incurred because of their error. In fact Parisot testified that the garage was incorrectly laid out on the plans and that the north wall had to be shifted eighteen inches. The evidence that the architect had to redesign the building leads to the factual conclusion that it was wrongly designed and/or misplaced on the layout of the buildings. The plaintiff is entitled to recover the sums paid the surveyor for correcting the building dimensions, restaking building lines and coordination with the architect, in the amount of $3,312.00. On item 2 for forms and cement to pour the correct wall he is entitled to recover $1,206.40 which is one fifth of the cost of that wall. He is only entitled to recover one fifth of the total cost of $6,032.00 of the new wall inasmuch as he only poured one fifth of the mislocated wall, and under the contract he was required to build a full wall which he did. Only one fifth of the misplaced wall is CT Page 1778 recoverable. Item 3 for daily discovery of dimension and layout differences requiring an additional layout person is disallowed as is item 4 for declaration of the project as a 1. result of the period required for the layouts of the new wall. There is no proof that a second supervisor was required. The plaintiff's request for item 4 states "the cost of deceleration is difficult to determine in dollars but not in time." It if is difficult for the plaintiff builder to determine then this court has no basis for a dollar award of damages. In addition the evidence discloses that there was in fact no slowdown on the project, the plaintiff used his employees elsewhere on the project. The plaintiff is entitled to recover $4,518.40 on Change Order 5. No contractors fee or overhead was claimed by the plaintiff on this item and none is awarded.
Change Order No. 12 is for extra walls and pier footings for two of the buildings. In excavating for the footings of those buildings soft spots in the soil was discovered at the prescribed depths. It therefore became necessary to dig further so that a solid base for the footings was found and that required extra height of the walls. The sum of $8,285, which include contractors fee and overhead, is found to be a reasonable charge for the extra work performed.
Change Order No. 4 for new trusses and engineering costs in the amount of $448 is allowed since they were required in order to correct variations of footing elevations, and revisions of the bathrooms. The sum which includes a contractors fee of $48.00 is found to be a reasonable charge for the extra work performed.
Change Order No. 27 is for furring of fire hose cabinets, removal of furring so that a fire cabinet could be installed, furring for a block wall of a stairway and fire stops in all walls. Item 4 for fire stops is disallowed since, the contract and specifications called for fire stops. Item 1 for furring out five fire hose cabinets in the amount of $2,515.00 is allowed since they were in addition to the five cabinets shown on the plans and specifications and were required by the fire marshall. The defendant's claim that the contract provides that the contractor shall comply with all statutory and ordinance requirements is not acceptable. That section of the contract requires the contractor to build in accordance with statutory and ordinance requirements, whatever is shown on the plans and specifications. It does not include items not shown on the plans and specifications but subsequently required by the authorities. All of the furring in the amounts of $2515.00 for item 1 $594 for item 2; and $806 for item 3 are allowed since the fire hose cabinets were built larger than shown on the plans. The sum of $4,384.80 which includes a contractors CT Page 1779 fee of 12% is found to be due to the plaintiff that sum being found to be a reasonable charge for the extra work performed.
Charge No. 33 is for extra work and materials for revisions to the structural steel for the atrium. The supporting structure for the atrium as designed was structurally defective and would not have been capable of supporting the structure. A structural engineer was required to redraw the new design which was devised and agreed upon by Shenworth, Parisot and Tiburzi. The sum of $5,602.00 which includes a contractor's fee of 12% is found to be a reasonable charge for the extra work performed.
Change Order No. 32 is for smoke detectors in the elevator shaft. The plans did not provide for the smoke detector installed but the fire marshall required it. Again the defendant relies on the contract provision that the contractor is required to comply with the state code for elevators. As: stated hereinbefore the contractor is only required to install within the code requirements that which is shown on the plans. What is not shown on the plans could not have figured in his bid for the contract and to require him to make up for the architects's error would be legally incorrect. The sum of $1128.00 including a contractor's fee is found to be a reasonable sum for the extra work performed.
Change Order No. 33 contains seven items and was submitted after most of the work on the project had been completed and after the plaintiff and defendant had met to discuss the hereinbefore six change orders. The first item is for extending a wall by 12 feet in length, and included the footage raising the stairway and extending the walkway. This extra was required because of the problems caused by the grade elevations provided by the defendant and/or his agents and because of a map change by the defendant to show a catch basin on the second map provided which did not show on the first map. The sum of $3004.91 is found to be a reasonable charge for the extra work performed. This includes a contractor's fee of 12% rather than the overhead and fee claimed on the extra submitted. Item two resulted from the architects desire for greater security for the elevator equipment room. The plans showed no air conditioning which was required by the state for that room as was the wall material which the plans showed as a one hour burning rate whereas the state required a two hour rate. Those changes in the plans and specifications were handled in the usual manner orally between the representatives of the parties and the sum of $3024 is found to be a reasonable charge for the extra work performed. That amount includes a contractors fee of 12% rather than the fees listed by the contractor on the bill. Item 3 for hollow metal doors is disallowed since the CT Page 1780 plaintiff's testimony was that he knew nothing about them. Item 4 is for additional handrails at the sidewalk and additional curb. This item was not shown on the plans and was required by the Town, in accordance with its code. To the defendant's argument that the contractor was required to comply with the code is the answer hereinbefore stated, that he was required to comply with the code for what the plans showed. The sum of $3651.20 is found to be a reasonable charge for the extra work performed. The overhead and fee shown on the bill are not allowed rather the sum of 12% contractor's fee is added on. Item 5 is disallowed since it is a repetition of change order 21. Item 6 for revisions to the truss design and of their spacing requiring eighty-four additional trusses was the result of the original truss design being defective in that it could not carry the load and the original spacing of the trusses was incorrect. $7150.08 is found to be a reasonable charge for the extra work performed. That amount includes a contractor's fee of 12% which the contractor added to most of the other extras. Item 7 for revision to the storm sewers on the lower level was the result of an error in the drainage and required that they be rebuilt. $1488.48 is found to be a reasonable charge for the extra work performed. The court has allowed $30 per cubic yard of rock excavation rather than the $100 listed on the bill, inasmuch as the smaller amount had previously been charged by the contractor. Again the contractor's fee is figured at 12% rather than the fees listed on the bid for the reasons previously stated. The total amount of $18,318.67 is allowed for change order No. 33. All of the amounts due which total $42,684.87 are found on the basis of quantum meruit claims, and the evidence discloses that all the charges for extras allowed by the court are reasonable.
The last item is the claim for utilities paid by the plaintiff after the date of substantial completion of the project. In accordance with the contract the architect signed a "Certificate of Substantial Completion" on December 6, 1985, which the plaintiff had executed on July 22, 1985. Leepson saw that document and dated it on December 19, 1985 made some changes in it but did not sign it which he cannot explain. That certificate established the date of substantial completion as August 1, 1985 and provided that the owner accept the utility charges thereafter. The utility bills incurred after August 1, 1985 were $12,561.00 which the plaintiff paid and which he is entitled to recover.
The contract provides for interest at the rate of 22% per month on unpaid balances. Since the recovery for the seven orders for extras is on a quantum meruit basis the contract interest should not be applied and statutory interest is allowed by the court from July 26, 1985 the date of the last CT Page 1781 bill to the date of this memorandum at the statutory rate of 10% per annum, not compounded.
The remaining issue is a claim of fraudulent conveyances by Peter Leepson to his wife Anne. A fraudulent conveyance is proved when a plaintiff sustains his burden of proving 1) no substantial consideration paid, and that the conveyance resulted in the conveyor being unable to pay his debts or 2) the conveyance was made with intent to defraud the creditor in which the grantee participated; Town Bank and Trust v. Benson,176 Conn. 304, 307; Denison Development Co. v. Gunther,189 Conn. 333, 335; Tapolsky v. Sacks, 191 Conn. 194, 200. There is no evidence to prove that Peter Leepson was unable to pay his debts as a result of conveying the premises known as 1 Nutmeg Lane and 37 Green Acre Lane both in Westport to his wife Anne. There is no showing that Anne Leepson participated in intending to defraud plaintiff and lastly, it was her money that was used to purchase 1 Nutmeg Lane the proceeds of the sale of which were used to procure 37 Green Acre Lane.
The plaintiff is entitled to recover the sum of $42,684.87 for the allowed seven change orders extras under counts one, two five and six. Judgment may enter on counts three, four, seven and eight for $12,561.00. The stated amounts are the totals to be recovered on those counts and are not intended to be entered on each count and thereafter totalled. The judgment for the plaintiff is in the amount of $55,245.87 together with interest of 10% from July 26, 1985. Judgment on Count nine may enter for the defendants Anne Leepson and Peter Leepson. The plaintiff is also entitled to recover costs of the action.
IRVING LEVINE STATE TRIAL REFEREE