[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO REARGUE
Plaintiff timely moves to reargue this court's decision of March 13, 2002 denying plaintiff's motion for a temporary injunction. The two grounds asserted for reargument are:
1. The court misconstrued Section 8.9 of the Declaration by not dealing with the phrase "whichever is sooner" in that section;
2. The court did not address the implications of Section 18.5 of the Declaration that requires that the defendant obtain the consent of 51% of eligible mortgagees for an extension of development rights beyond seven years from the recording of the Declaration.
The following occurred after the motion was filed:
The court held a hearing on plaintiff's motion on April 16, 2002 at which time the court suggested the issue of consents of eligible mortgagees could be avoided if they were obtained. The defendant indicated it would seek to obtain them. At a hearing on August 5, 2002, the defendant made an offer to submit the mortgagee's consents and the defendant objected on the ground that the consents would constitute hearsay. The court indicated that it thought the plaintiff's objection had merit and the defendant then stated that it would seek to obtain testimony of the mortgagees, all of which were out of state, through depositions. Apparently, for reasons which are not testified to on the record, the defendant decided to give up its attempt to get the depositions.
At a hearing on October 29, 2002, the parties agreed in open court that there were three eligible mortgagees within the meaning of the Declaration, namely, World Savings, holding mortgages on unit 114 Winterbourne Lane and unit 14 Camille Lane; First Nationwide Mortgage Corporation, holding a mortgage on unit 2 Brookview Circle; and GMAC CT Page 15330-b Mortgage, holding mortgages on 132 Winterbourne Lane and 16 Camille Lane. The defendant put its owner, Jerry Saglimenbeni on the stand who testified that he had solicited the consents from the above-named mortgagees. They sent those consents to him on forms prepared by defendant's attorney. Each of the consents, entitled "Consent to Extension of Development Rights, Cantonbury Heights Condominiums", provide:
 "The undersigned [one of the above mortgagees], an Eligible Mortgagee pursuant to the Declaration of Cantonbury Heights Condominium . . . hereby agrees that Local Land Development, LLC and any other successor Declarant may exercise Development Rights more than seven years following the Initial Filing and hereby consents to the extension of the time to exercise Development Rights to the full twenty-one year period as set forth in Section 8.2 of the Declaration."
The plaintiff objected to the admission of the consents on the grounds that they were hearsay. The defendant argued that they were admissible as verbal acts. The court allowed the consents be marked for identification but, being unfamiliar with the concept of verbal acts, reserved decision as to their admissibility. The defendant offered no other evidence. The plaintiff also rested, relying on its objection to the admissibility of the consents.
The parties also stipulated at the hearing that plaintiff's motion for a temporary injunction should be considered as a claim for a permanent injunction.
 I. The Meaning of Section 8.9 of the Declaration.
Section 8.9 provides:
 "Unless sooner terminated by a recorded instrument executed by the Declarant, any Special Declarant's rights may be exercised by the Declarant so long as the Declarant is obligated under any warranty or obligation, owns any units or any security interest on any units, or for twenty-one years after recording, whichever is sooner."
It is undisputed that no termination of the Declaration was recorded. Plaintiff argues that if any of the conditions set forth in 8.9 of the CT Page 15330-c Declaration were not satisfied the Special Declarant's Rights lapsed. In its decision, the court indicated that such an interpretation would require that once the Declarant sold its last unit, Declarant's rights terminated even though warrantees on those sales had not expired. It went on to say that "The language of that section clearly provides that the Special Declarant rights continue as long as any of the conditions stated continue: namely Declarant is obligated under warranty, or owns a unit or a security interest in the unit, or is obligated on any other `obligation'". The court meant, and now makes clear, that the phrase "whichever is sooner" in Section 8.9 relates to termination of all the conditions mentioned in the paragraph, or for twenty-one years after the recording of the declaration of termination, whichever occurs first. The outer term of the Special Declarant rights is twenty-one years, but they may expire before then if the Declarant is no longer obligated on any other obligation.
The court has properly interpreted the pertinent section and plaintiff's claim for reconsideration on the basis of a misconstruction is denied.
 II. The Meaning of Section 18.5 of the Declaration.
The plaintiff did not mention in its briefs that the court should consider the impact of Section 18.5 of the Declaration in determining the continuation of the defendant's Declarant's Rights. However, plaintiff did raise the issue in the argument after the briefs were filed. It is an issue the court overlooked, and, now, by the plaintiff properly calling it to the court's attention, the court should address it.
Section 18.5 of the Declaration provides:
"Section 18.5 Development Rights
. . .
 In the event that Development Rights are exercised following seven years after recording of the initial Declaration, they may not be exercised without consent of the holders of fifty-one percent of the Eligible Mortgagees to the extension."
It is undisputed that the defendant is seeking to exercise its right to construct the additional condominiums more than seven years after the recording of the Declaration. As a consequence, the plaintiff argues that without providing reliable evidence that it obtained the consent of 51% CT Page 15330-d of the mortgagees, it does not have the right to continue the construction and so an injunction should issue. To counter that the defendant argues that Section 18.5 requires consents only before Development Rights are exercised. It points to Conn. Gen. Stat. §47-229 (a) that provides, "To exercise any development rights . . . the developer shall prepare, execute and record an amendment to the declaration", and to Conn. Gen. Stat. § 47-220 that provides:
 "A declaration or an amendment to a declaration adding units may not be recorded unless all structured components of all buildings . . . are substantially completed in accordance with the plans."
Accordingly, the defendant asserts that it is not required to obtain the consents until after the units have been built.
This court is unpersuaded by the defendant's argument. Development rights are defined in the Declaration at Section 2.10 to mean: "The right reserved by the Declarant under Article VIII of the Declaration tocreate units. . . ." (underlining added)
Article VIII, Section 8.1 provides that "Development Rights include: "(a) the right to add units . . . in the location shown as `Development Rights Reserved in This Area'. . . .," (underlining added)
(c) All buildings and improvements constructed under the Development Rights will be architecturally consistent with the buildings and improvements constructed pursuant to the Declaration as initially recorded, . . ."
Section 8.4 defines Special Declarant's Rights as "(a) to complete improvements indicated on surveys and plans filed with the Declaration; (b) to exercise any Development Rights reserved in this Declaration; . . ."
The defendant would like this court to construe Special Declarant's Rights to relate to the construction of the additional units and Development Rights to relate to the declaration of the units, in the final amendment of the Declaration recorded in the land records. The court concludes, however, that both sets of rights must be read together. By the Declaration defining Development Rights as "to add" or "to create" units, the court construes Development Rights to mean to build them. Thus, the exercise of Development Rights begins at the start of construction of the additional units and is completed when the units are declared by an amendment to the Declaration filed in the land CT Page 15330-e records.
Such an interpretation makes sense. If after the units were constructed and the requisite percentage of mortgagees refused to consent to them, there would be a violation of Section 18.5. As a consequence, the court could require their destruction and the premises restored to its prior condition. The parties to the Declaration could not have intended that irrational result.
Rather, the proper meaning of Section 18.5 is that the developer must get the 51% consent at the time it undertakes the construction of the additional units. It can at that time prepare plans and present its proposal for development on the basis of which the mortagees can determine whether or not to give their consents.
Turning to whether or not the defendant has obtained the requisite number of consents of eligible mortgagees, at the hearing the parties agreed in open court that there were three eligible mortgagees, such mortgagees having mortgages on five units. These were World Savings, GMAC Mortgage and First Nationwide Mortgage Corporation. Defendant offered into evidence the written consents of these three mortgagees. They were marked as exhibits for identification. Plaintiff objected to their admission on the grounds that they were hearsay and defendant asserted they were admissible because they were verbal acts. The court reserved the decision on their admissibility and now must decide the question.
Hearsay is a statement offered in evidence to establish the truth of the matter asserted. Connecticut Code of Evidence, Section 8.1. A verbal act is "an out-of-court statement that causes certain legal consequences, or, stated differently, is an utterance to which the law attaches duties and liabilities." C. Tait, Tait's Handbook of Connecticut Evidence, Third Edition (2001), Section 8.8, p. 575. It is not hearsay because it is not offered for its truth.
The Connecticut Code of Evidence does not mention verbal acts, but the comment of the advisory committee to Federal Rules of Evidence at Section 801(c) does. It states "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted and the statement is not hearsay." The comment mentions that letters of complaint from customers may be offered as a reason for cancelling a dealer's franchise. It goes on to state "The effect is to exclude from hearsay the entire category of verbal acts . . . in which the statement itself affects the legal rights of the parties . . ." CT Page 15330-f
Examples of verbal acts are given in 2 Holden Daly, Connecticut Evidence, Section 98d (1988); 6 Wigmore on Evidence, §§ 1770, et. seq. (1976); and 2 McCormick on Evidence (5th Edition); Practitioner Treatise Series, Section 249 (1999).
As stated in McCormick on Evidence, supra "When a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay. Similarly, proof of all utterances by the parties in a contract suit constituting the offer and acceptance which brought the contract into being are not evidence of assertions offered testimonially but rather verbal conduct to which the law attaches duties and liability."
The leading case in Connecticut on the admissibility of verbal acts as they relate to contracts is Gyro Brass Manufacturing Corporation v.United Automobile Workers, 147 Conn. 76 (1959). In that case the defendant union had blocked the plaintiff, Gyro Brass Manufacturing Corp. (hereinafter "Gyro") from entering the plant of Chase Brass and Copper Company (hereinafter "Chase") to obtain certain parts. The issue was whether a certain sales contract between Gyro and Chase had been modified by an oral agreement so as to give title to the parts in the Chase plant to Gyro and, therefore, give Gyro grounds for a replevin action to obtain the parts. The president of Chase testified to the contract modification. The trial court ruled that the testimony was inadmissible as hearsay. The Supreme Court, in overruling the trial court, stated (p. 80):
 Whether there was an oral modification of the sales agreement between Chase and the plaintiff [Gyro] as a result of the conversation depended on whether certain words were spoken in the course of it. To prove such modification would necessitate testimony as to the contents of the conversation . . . The utterances themselves were the facts in issue and could be proven through any witness who heard them spoken . . . Testimony of the content of an utterance, offered only to prove that it was made, is not hearsay. The testimony which the plaintiff sought to introduce was not objectionable as hearsay, and the court erred in excluding it."
In National Labor Relations Board v. H. Koch Sons, 578 F.2d 1287,1290-91 (9th Cir. 1978), the issue was whether words of assent to an oral agreement were admissible. The objection was raised that the testimony was hearsay. The court held, "Bruno's testimony as what Young said would CT Page 15330-g be hearsay if introduced to prove the truth of what Young said. F.R.E.801(c). It was not offered or received for that purpose but only to show that Young uttered words of assent, regardless of their `truth'. That is not hearsay at all, but rather evidence of verbal conduct." See also,Mueller v. Abdnor, 972 F.2d 931, 937 (8th Cir. 1992).
In Sheedy v. Stall, 468 P.2d 529, 530, 532 (Ore, 1970), plaintiff real estate broker sued the defendant owner of a house for a real estate commission. The sales agreement provided that it was subject to the buyer's attorney approving the earnest money receipt. The plaintiff sought to testify that the buyer had told him that his attorney had approved the deal. The trial court upheld an objection of hearsay to the conversation. The Oregon Supreme Court reversed, holding, "Regardless of whether the buyer's attorney actually approved the earnest money receipt, the buyer's statement to the plaintiff broker that his attorney had approved would fulfill or waive the condition. . ."
In the case before this court the consents of the eligible mortgagees are the operative acts that give rise to the legal consequences that the requirements of Section 18.5 have been fulfilled. They are not offered for their truth but to prove that they were given. As such, they are verbal acts.
The plaintiff relies upon the recent Supreme Court case of Urich v.Fish, 261 Conn. 275 (2002) in support of its claim that the consents are not verbal acts. In that case the trial court allowed into evidence a document containing price quotes by a third party offered to prove the value of certain items that were to be included in the sale of a boat on the grounds it was a verbal act. The Supreme Court reversed, holding the document was offered for the truth of value of the items on the list and, as a consequence, was hearsay. The case is distinguishable from the one before this court, in that the consents are here offered not for their truth but to show they were made. They are verbal acts because they are "an out-of-court statement that causes certain legal consequences," C. Tait, Connecticut Evidence, Section 8.8 at 575, supra.
Based on the foregoing, the court concludes that the consents are admissible into evidence as verbal acts. Since they represent the consents of more than 51% of the eligible mortgagees, the defendant has complied with Section 18.5 of the Declaration. It is, thus, likely to prevail in its defense of the plaintiff's claim for a permanent injunction.
The court's decision, having been reconsidered, is reaffirmed and the defendant's claim for an injunction is denied. CT Page 15330-h
 BY THE COURT ____________________ Robert Satter Judge Trial Referee
CT Page 15330-i