# STATE OF CONNECTICUT *v.* DAVID PLAZA
## (8389)

DUPONT, C. J., NORCOTT and LANDAU, JS.

Argued September 14—decision released December 11, 1990

*Gregory T. D'Auria,* with whom, on the brief, was *James W. Bergenn,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen Sedensky,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). He claims that the trial court improperly (1) denied his motion to suppress identification evidence, (2) allowed the state to elicit hearsay testimony regarding an out-of-court identification, (3) prohibited the defendant from cross-examining the state's key witness for bias, (4) allowed the admission into evidence of uncharged misconduct, and (5) allowed the state to make an argument in its summation that was not based on the evidence. The defendant further claims that there was insufficient evidence to prove an element of the crime, the sale of a narcotic substance.

The jury reasonably could have found certain relevant facts from the evidence. On the evening of May 22, 1987, Trooper Ramon Valentin of the Connecticut state police entered a Bridgeport bar to make a controlled purchase of narcotics. He was working undercover with the statewide narcotics task force, on loan from the auto theft unit of the state police. After a short period of observing the activity in the bar, Valentin spoke to a person identified only as David, who subsequently was determined to be the defendant. The two conversed for a few minutes, then Valentin told the defendant that he was "interested in some coke or blow." The defend-

ant reportedly said, "I can take care of that," and instructed the trooper to follow him to the men's room.

Once in the men's room, the defendant pulled a glassine bag containing a white, rock-like substance from his pocket. He placed approximately one half of a gram of the substance into a $20 bill folded like an envelope supplied by Valentin. Valentin paid $50 in unmarked state funds for the substance.

The defendant also gave Valentin a beeper number, which was later shown to be assigned to the defendant's brother. Sometime during this transaction, the defendant mentioned that his brother drove a late model Jaguar, a fact substantiated by the testimony of another trooper. The defendant also told Valentin that he could supply more cocaine at $1000 an ounce.

Valentin met Trooper John O'Leary, who was acting as cover and surveillance officer for this operation, at a prearranged location approximately ten minutes after the transaction in the bar. O'Leary testified that Valentin gave him a $20 bill folded like an envelope containing white powder. O'Leary field-tested the white powder for the presence of cocaine. Both troopers initialed the $20 bill, and then the bill and its contents were placed in an evidence bag, which was then sealed.

O'Leary further testified that he originally had placed an orange evidence sticker labeled with an incorrect case number on the evidence bag, but that the correct case number was later written on the bag with a grease pencil. The evidence bag was introduced as an exhibit at trial bearing both the incorrect label and the number written in grease pencil.

One month after this incident, Valentin viewed a photographic array assembled by O'Leary. At a suppression hearing held before trial, Valentin testified that he "zoomed in" on photograph number two, thereby

identifying the defendant as the David who had sold him the cocaine. A warrant was issued for the defendant's arrest on the strength of Valentin's photographic identification and additional tests from the toxicology lab indicating that the substance wrapped in the $20 bill was cocaine.

The defendant first claims that the trial court should have suppressed Valentin's identification of him because it was based on an unnecessarily suggestive and unreliable photographic array. Specifically, he points out that all of the other photographs were taken against the same kind of paneled background, whereas his was not, and that the size of the head in his photograph was larger than those in the other photographs. He claims that Valentin, as a trooper familiar with mug shots and photographic arrays, would have been influenced by the differences in the photographs, causing him to pick the defendant's photograph out of the array. The defendant also claims that the identification was unreliable because the viewing took place a month after the alleged purchase, so that Valentin's memory would have been clouded by intervening investigations. Finally, the defendant points out that Valentin testified that he had initialed the back of the photograph he had chosen but in fact there were no initials on the defendant's photograph.[1]

Valentin testified at the suppression hearing that he had observed the defendant for ten or fifteen minutes before approaching him to make the buy. The transaction itself took another few minutes. The lighting throughout his encounter with the defendant was adequate for him to see the defendant. Valentin also testified that shortly after leaving the bar he described the defendant to O'Leary as an "Hispanic male with

[1] Valentin's exact words were "I believe the picture I identified should have my initials on the back."

squinted eyes, black hair and a little bit of a moustache." He later identified the defendant from the photographic array without hesitation. The fact that this later identification of the defendant was made about a month after "the incident does not 'under all the circumstances' of this case create a ' "very substantial likelihood of misidentification." ' " *State* v. *Fullwood,* 193 Conn. 238, 251 n.8, 476 A.2d 550 (1984), citing *Manson* v. *Brathwaite,* 432 U.S. 98, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1972); see also *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

"It is well settled that in order to succeed on a motion to suppress identification evidence, the defendant must prove (1) that the identification procedures were unnecessarily suggestive; and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Myers,* 193 Conn. 457, 464, 479 A.2d 199 (1984); *State* v. *Anderson,* 20 Conn. App. 271, 274, 560 A.2d 436 (1989), cert. denied, 213 Conn. 813, 569 A.2d 549 (1990). Here, the identification procedures were not unnecessarily suggestive; *State* v. *Outlaw,* 216 Conn. 492, 502, 582 A.2d 751 (1990); *State* v. *Boscarino,* 204 Conn. 714, 727, 529 A.2d 1260 (1987); *State* v. *Vaughn,* 199 Conn. 557, 564, 508 A.2d 430 (1986); and the resulting identification was reliable in the totality of the circumstances. See *Neil* v. *Biggers,* 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

The defendant next challenges the trial court's admission of O'Leary's testimony about Valentin's identification of the defendant from the photographic array. The defendant argues that by eliciting hearsay testimony regarding the identification procedures, rather than putting the photographic array itself before the jury, the state protected the array from challenges to its reliability.

We agree that O'Leary's testimony was hearsay and that the defendant's objection to its admission should have been sustained. O'Leary's testimony, however, was merely cumulative of Valentin's in-court identification of the defendant. *State* v. *Dolphin,* 195 Conn. 444, 454, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). We conclude that the court's ruling is not ground to reverse the judgment because the evidence admitted had already "properly entered the case." Id., 455, citing *State* v. *Randolph,* 190 Conn. 576, 589–90, 462 A.2d 1011 (1983).

We disagree with the defendant's claim that the trial court improperly deprived the defendant of the opportunity to cross-examine Valentin for bias. The defendant sought testimony relating to the working relationship between O'Leary and Valentin, and asked whether O'Leary's opinion of Valentin's performance affected Valentin's chances of becoming a permanent member of the statewide narcotics task force. The trial court excluded this evidence as irrelevant.

Impeachment of a witness for bias is a matter of right, but where no foundation has been laid by cross-examination of the witness who is under attack for bias, the decision to admit impeaching evidence is within the discretion of the court. *State* v. *Crowley,* 22 Conn. App. 557, 559, 578 A.2d 157 (1990).

The defendant here presented no evidence of Valentin's desire to become a part of the narcotics task force, or of the objective desirability of such an assignment. At the time of the controlled buy, Valentin was already working undercover with the task force, although not permanently a member of it. Thus, there is no basis in the record for the inference that the trooper would act improperly to obtain a post on the task force. "It is a reasonable exercise of judicial discretion to exclude

. . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." *State* v. *Moynahan,* 164 Conn. 560, 589, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

The defendant's fourth claim is that Valentin's testimony about a statement made by the defendant to a third party in the men's room after the alleged sale to Valentin was inadmissible evidence of uncharged misconduct. Valentin testified that the defendant told the third person, "Yes, I can take care of you." This statement to the third party closely resembled the defendant's answer to Valentin when the trooper asked for drugs. The defendant claims that the statement was both irrelevant and inflammatory. The trial court admitted the statement because "it was probative of the defendant's inclination to be a seller of cocaine."

Evidence of uncharged misconduct may not be admitted to show a person's propensity to commit a certain type of crime, but it is admissible to prove issues such as motive, intent, opportunity, or a common scheme or system of criminal activity. *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988): C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 8.3.2. Evidence of misconduct may also be introduced to complete the story of the crime on trial, but in that case such evidence (1) must be relevant and material to at least one of the circumstances encompassed by the exceptions, and (2) its probative value must outweigh its prejudicial effect. *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986), citing C. McCormick, Evidence (3d Ed.) § 190.

The statement in question, however, does not relate to uncharged misconduct at all, because standing alone, it is not evidence of, or evidence tending to show, the

existence of a crime. Compare *State* v. *Sierra*, 213 Conn. 422, 568 A.2d 448 (1990); *State* v. *Greene*, supra; *State* v. *Brown*, supra; *State* v. *Shindell*, 195 Conn. 128, 134, 486 A.2d 637 (1985). The statement, however, was admissible because it was relevant and probative of a fact in issue. *State* v. *McClendon*, 199 Conn. 5, 8–9, 505 A.2d 685 (1986). The primary question to be resolved beyond a reasonable doubt by the jury was whether the defendant had intentionally sold a narcotic substance. General Statutes § 21a-278 (b). The statement was probative of that issue because it evinced a method of selling characteristic of the defendant. *State* v. *Sierra*, supra, 432. The words spoken by the defendant were reminiscent of those spoken to Valentin prior to his controlled buy from the defendant, and they were spoken in the men's room.

Thus, the statement, coupled with other evidence, tended to indicate the defendant's intent to sell a narcotic substance and was admissible as an inquiry into the circumstances that followed the crime. *State* v. *Vars*, 154 Conn. 255, 267, 224 A.2d 744 (1966). It was evidence tending to establish a fact in issue and its existence rendered the other facts more reasonable and logical. *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). The trial court was, therefore, correct in admitting the statement into evidence.

We will consider the last two claims of the defendant in tandem. First, the defendant claims that because the substance tested by Joel Milzoff, the state toxicologist, was described as a white powder, while the substance bought by Valentin was described as white rock, the state has not proved beyond a reasonable doubt that the substance sold was a "narcotic substance," an essential element of the crime charged. The defendant buttresses this argument by pointing to the error made in labeling the evidence. He claims this error destroyed

the chain of custody thus bringing into question whether the state brought the correct substance before the jury.

When presented with a claim of insufficiency of evidence of an element of a crime, this court first reviews the evidence presented at trial in the light most favorable to sustaining the verdict. *State* v. *Kelly,* 208 Conn. 365, 386, 545 A.2d 1048 (1988). "We then determine ' "whether the jury could have reasonably concluded, upon the facts established and inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " *State* v. *Carpenter,* 214 Conn. 77, 78, 570 A.2d 203 (1990); *State* v. *Kelly,* 23 Conn. App. 160, 173, 580 A.2d 520 (1990). We conclude that the evidence regarding the nature of the substance sold was sufficient to justify the verdict of guilty beyond a reasonable doubt.

Milzoff's testimony was that the substance tested at the state lab was a narcotic. It remained the state's burden to produce enough evidence so that the jury could reasonably infer that the substance identified at the state laboratory as cocaine was the same substance purchased from the defendant and that the cumulative effect of the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant sold a narcotic substance. See *State* v. *Nieves,* 186 Conn. 26, 31, 438 A.2d 1183 (1982); *State* v. *Pina,* 185 Conn. 473, 477, 440 A.2d 962 (1981).

Although it was true that the substance purchased was described as "rocklike" and the substance analyzed was described as a powder, the state introduced sufficient evidence to establish an unbroken chain of custody. It was the state that originally introduced and sought to explain the mislabeling of the evidence bag. The state also produced at trial every person who had handled the evidence, except a state chemist whose tes-

timony was included in Milzoff's report, and a courier. "The state is not required to prove every circumstance in the chain of custody by producing all persons who were in a position to come into contact with the evidence." *State* v. *Bruno,* 1 Conn. App. 384, 388, 473 A.2d 311, aff'd, 197 Conn. 326, 497 A.2d 758 (1984), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986). The jury also had before it the initialed $20 bill as an additional identifier of the substance allegedly sold by the defendant. Considering all of this evidence, "the jury could have concluded that the characterization of the substance made by either the doctor or the police officers was inaccurate but that both were referring to the same material." *State* v. *Nieves,* supra, 30. Viewing the evidence as a whole, we conclude that the jury could have reasonably inferred that the substance bought by Valentin was the same substance later tested and found to be cocaine.

Our conclusion that the jury had sufficient evidence before it to draw reasonable inferences about the nature of the substance in question leads to a resolution of the defendant's claim that the state's argument during summation was unfairly prejudicial to the defendant. In closing argument, in rebuttal of the defendant's final argument, the prosecutor hypothesized that the rocky substance purchased by Valentin could have been rendered into powder by its subsequent handling.[2] The defendant claims that this statement allowed the state to resolve an inconsistency in the evidence by presenting, in effect, a scientific theory that had no basis in expert testimony.

---

[2] The prosecutor stated: "When you go into the jury room to go get the cocaine, the cocaine that was put in the $20 bill, stuck into the officer's pocket, given to another officer who put it into an evidence bag which was then put in the vault, sent up to the lab, opened up, some parts taken and tested, wrapped back up in the $20 bill and sent back down to the court. Look at it. It might very well be in powder form now after all that. That is your decision to make."

To determine whether allegedly improper comments by a prosecutor denied a defendant a fair trial such comments must be considered in the context of the entire trial. *State* v. *Richardson,* 214 Conn. 752, 760, 574 A.2d 182 (1990). The burden is on the defendant to prove that the remarks were so prejudicial that there was a deprivation of a fair trial. In addressing the jury "[c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902).

Here, most of the disputed comments are a recitation of the chain of custody of the purchased substance, and, as such, merely a recapitulation of the testimony of several prosecution witnesses. In addition, the prosecutor did not state that the handling of the substance by the various witnesses *had* turned the cocaine rock to powder. Instead, he invited the jury to draw the reasonable inference, from substantial evidence, that such handling could have produced this transformation.

This is not a case of "deliberate prosecutorial disregard of express judicial directions or established rules of fair play." *State* v. *Fullwood,* 194 Conn. 573, 584, 484 A.2d 435 (1984). Rather, the question before us is whether the trial court abused its discretion in determining that the prosecutor's comments did not deprive the defendant of a fair trial. Here, the trial court was in the "better position to determine the propriety of the remarks of counsel and whether or not they are harmful," and decided that the statement was fair comment, and not harmful to the defendant. *State* v. *Glenn,* 194 Conn. 483, 493, 481 A.2d 741 (1984). We agree.

The judgment is affirmed.

In this opinion the other judges concurred.