STATE OF CONNECTICUT *v.* EDITH PEARL
(10034)

FOTI, LAVERY and CRETELLA, Js.

Argued April 2—decision released August 11, 1992

*Richard R. Brown,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Patricia A. Swords,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2)[1] and General Statutes § 53a-122 (a) (4),[2] and second degree forgery in viola-

---

[1] General Statutes § 53a-122 (a) provides in pertinent part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ."

[2] General Statutes § 53a-122 (a) provides in pertinent part: "A person is guilty of larceny in the first degree when . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

tion of General Statutes § 53a-139.[3] The defendant claims that the trial court incorrectly (1) found sufficient evidence to sustain a guilty verdict on the two counts of first degree larceny, (2) found sufficient evidence to sustain a guilty verdict on the charge of forgery, and (3) admitted into evidence certain secondary documents in violation of the best evidence rule. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant was employed as a scheduler at the Mansfield Training School, a state agency. As a scheduler, she was responsible for maintaining records of employees' work history and attendance, including overtime, compensation time, sick leave, holidays, vacations, and personal leave, as well as keeping track of her own attendance. To keep track of employees' attendance, the defendant listed their hours on time and attendance records which were then signed by her supervisor and thereafter kept on file in her office. The defendant then transcribed the information contained in these records onto biweekly time sheets (biweeklies) which she submitted to the payroll department. Payroll personnel then transferred the information contained in the biweeklies onto official payroll time cards and initialed the upper corner of each biweekly. Payroll personnel used the information copied from the biweeklies to calculate the amount of pay due to each employee according to the category of hours worked and the employee's wage rate. Payroll personnel kept

---

[3] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed . . . (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant . . . ."

the payroll cards in their office and returned the biweeklies to the defendant after making photocopies of them. After she received the biweeklies from the payroll department, the defendant kept them on file in her office.

During the period of time from October 25, 1985, to July 13, 1989, the defendant submitted biweeklies to the payroll department on which she inflated the actual number of hours she worked. After transcribing the numbers onto the payroll cards, the payroll department returned the biweeklies to the defendant. The defendant then either deleted the inflated hours from the biweeklies or substituted forged biweeklies so that the biweeklies on file in her office reflected only the hours actually worked. She then forged the initials of payroll personnel on the altered biweeklies.

During an investigation into the defendant's conduct, the defendant's biweeklies were recovered from her office. These documents revealed only a few hours of overtime in comparison to the payroll cards, which indicated that the defendant had been paid for many hours of overtime. Additionally, the defendant's biweeklies contained numerous erasures and white-out markings. There were no similar erasures evident on the biweeklies of other employees, which were also on file in the defendant's office. Additionally, the defendant had blank copies of biweeklies in her office.

Overall, the payroll cards and other documents indicated that the defendant had been paid for between 2800 and 2950 hours of overtime, totaling approximately $59,000, in four years. During some weeks, the defendant was paid for between forty and fifty hours of overtime. At trial, there was testimony that the defendant's job did not require this amount of overtime. Furthermore, it was the policy of Mansfield Training School that all overtime hours be approved by the

assistant director of the school. There was testimony that the defendant had received permission from her supervisor for only a few hours of overtime work during the four year period in question.

Several witnesses testified at trial that they had rarely seen the defendant work before or after her regular shift, which was from 7 a.m. until 3:30 p.m. Many of these witnesses also testified that during the times in question, they did not see the defendant's car parked at the school. Furthermore, there was testimony that the defendant had stated to her supervisor that she always was able to complete her work within the normal work week and could not understand why other schedulers had difficulty doing so.

## I

The defendant first claims that the evidence was insufficient to sustain a verdict of guilty of first degree larceny in violation of General Statutes § 53a-122 (a) (2) and (4). The defendant argues that the jury could not have reasonably concluded that she was guilty beyond a reasonable doubt, and that the state failed to prove beyond a reasonable doubt that she did not work the overtime hours she submitted to the payroll department on the biweeklies. The defendant emphasizes that none of the state's witnesses could say definitively that she was not working during the times she claimed to have worked.

Our review of the record, however, leads us to reject the defendant's arguments. Although the state's case rested largely on circumstantial evidence, "there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *King,* 216 Conn. 585, 602, 583 A.2d 896 (1990). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involv-

ing substantial circumstantial evidence." *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). "When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether ' "the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " (Citations omitted.) *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Kennedy,* 20 Conn. App. 354, 368, 567 A.2d 841 (1989), cert. denied, 215 Conn. 805, 573 A.2d 317 (1990). It is a well established principle that we, as a reviewing court, do not " 'sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility.' " *State* v. *Rodriquez,* 200 Conn. 685, 693, 513 A.2d 71 (1986), quoting *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). We will not disturb the determination of the trier of fact if, viewing the evidence in the light most favorable to sustaining the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State* v. *Edwards,* 201 Conn. 125, 151, 513 A.2d 669 (1986); *State* v. *Waterman,* 7 Conn. App. 326, 338–39, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986). "The state need not offer proof of guilt 'beyond a possible doubt.' " *State* v. *Hicks,* 169 Conn. 581, 585, 363 A.2d 1081 (1975).

The defendant was charged with two counts of larceny in violation of General Statutes § 53a-122 (a) (2)

and (4). Larceny occurs when, "with intent to deprive another of property or to appropriate the same to himself or a third person, [a person] wrongfully takes, obtains or withholds such property from an owner." General Statutes § 53a-119; *State* v. *Marra*, 174 Conn. 338, 342, 387 A.2d 550 (1978); *State* v. *Rochette*, 25 Conn. App. 298, 304, 594 A.2d 1006, cert. denied, 220 Conn. 912, 597 A.2d 337 (1991). To convict a person under § 53a-122 (a) (2), the state must prove that the value of the property exceeded $10,000, and to convict a person under § 53a-122 (a) (4), the state must prove that the property was obtained by defrauding a public community, with the value of the property in excess of $2000.

At trial, the state presented alternative theories of guilt. The state's primary theory was that the defendant did not actually work the overtime hours that she claimed on her biweeklies and for which she was paid. In the alternative, the state asserted that even if the defendant had worked the overtime hours in question, she did so wrongfully because she had not received approval from her supervisor to work the extra hours, and she did so to obtain moneys to which she was not entitled. She committed a larceny by obtaining that overtime pay by false pretenses in violation of § 53a-119 (2). We conclude that there was sufficient evidence for the jury to have found the defendant guilty under either theory.

The state offered the testimony of Charles Devaux, the personnel manager at Mansfield Training School during the time in question, who investigated the irregularities in the defendant's attendance sheets. During his investigation, Devaux compared the biweeklies that were turned into the payroll department with the time and attendance records and found many inconsistencies. On the biweeklies submitted to payroll, the defendant claimed many hours that were not listed on

the time and attendance sheets. Devaux testified that there were also many erasures of overtime hours on the biweeklies made after they were returned to the defendant from the payroll department. Devaux found 352 instances in which a total of 2950 hours of unauthorized overtime was listed on the payroll time cards but not on the time and attendance sheets. Also, he discovered sixteen holidays on which the defendant reported to the payroll department that she had worked, but on the time and attendance sheets listed herself as not working. These instances totaled 128 hours. Devaux found that on forty-two occasions, the defendant had listed herself as working but had taken vacation. Additionally, he testified that on twelve occasions, the defendant called in sick, but had marked herself as working on the payroll records. This time totaled seventy hours. He discovered eight occasions on which the defendant reported to payroll that she was sick, and reported to her supervisor that she was taking vacation time. Devaux testified that in inspecting the biweeklies recovered from the defendant's office, it appeared to him that they did not contain the correct initials of the staff in the payroll department.

With regard to the state's primary theory that the defendant falsely claimed to have worked the hours in question, the state presented at least nine witnesses who testified that they had rarely, if ever, seen the defendant work before or after her regular shift. For example, Thomas O'Meara, a shift supervisor at Mansfield Training School, testified that during the time in question, his desk was located three feet from the defendant's. O'Meara testified that he worked a flexible schedule, meaning that he would adapt his schedule to the needs of the unit and often worked the second, third and weekend shifts. O'Meara testified that the defendant was typically present in the office during her regularly scheduled shift, 7 a.m. until 3:45 p.m.,

and that to his knowledge she did not work flexible time. O'Meara testified that during the times he worked the second, third and weekend shifts, he never saw the defendant at work, nor did he observe her car parked in the parking lot.

The state introduced the biweeklies, the time and attendance records, and the official payroll time cards into evidence. For example, the defendant's biweeklies from March 14, 1986, through March 21, 1986, show that the defendant took vacation on March 14, and March 17 through 21. The biweeklies indicate that March 15 and 16 were pass days. The time and attendance records for that period correspond to the biweeklies. The time cards submitted to the payroll department, however, indicate that on March 14, the defendant worked seven hours, on both March 15 and 16, she worked eight hours overtime, and between March 17 and 21, she worked seven hours per day.

Similarly, the time and attendance cards for October 28 and 29, 1986, indicate that the defendant took vacation on those dates. The biweeklies for those dates also reflect that the defendant took vacation on those dates. The payroll time cards indicate, however, that the defendant worked eight hours on each of those days. O'Meara testified that he approved the defendant's vacations on those dates, and she did not request permission to reschedule her vacation time.

The evidence was also sufficient to prove the defendant's guilt under the state's alternative theory that, even if the defendant did in fact work all of the hours she claimed to have worked, she did so wrongfully because she had not received authorization to work overtime. Several witnesses testified at trial that employee overtime was a critical problem at Mansfield Training School and that employees were under pressure to reduce their overtime hours as much as possi-

ble. The defendant was aware of this problem and had attended several meetings where this issue was discussed. The defendant was aware that all schedulers were required to obtain the approval of their supervisors in order to work overtime. There was testimony that the defendant had been granted approval to work only a relatively small number of overtime hours during the period in question. Furthermore, the defendant admits in her brief that she did not comply with the rule requiring preapproval of overtime hours.

We conclude that the evidence was sufficient to sustain the defendant's conviction under either of the state's theories of guilt. From the evidence presented, the jury could have reasonably found the defendant guilty of larceny in violation of subdivisions (2) and (4) of General Statutes § 53a-122 (a).

## II

The defendant next claims that there was insufficient evidence to sustain her conviction of forgery in the second degree in violation of General Statutes § 53a-139. The defendant argues that there was insufficient evidence to prove that she altered the biweeklies, and, even if there was sufficient evidence to prove that she did so, the evidence was not sufficient to show that the altered records were not true and accurate. Moreover, the defendant maintains that the state failed to meet its burden of proving that in altering the records, the defendant intended to deceive, defraud or otherwise injure another as required by General Statutes § 53a-139. We do not agree.

Our review of the record and the transcript leads us to conclude that there was sufficient evidence for the jury to find that the defendant forged the initials of payroll personnel on the biweeklies in violation of General Statutes § 53a-139.

The following additional facts are necessary to our resolution of this claim. Kathy Incandella, a payroll officer at the Mansfield Training School, testified that as a matter of course, when the biweeklies are submitted to the payroll department, she and the other payroll officers transpose the information onto official payroll time cards that remain in the payroll department. The officers then return the biweeklies to the scheduler. She testified that each payroll officer sees each timesheet and initials the biweeklies at the top of each sheet. At trial, the state showed Incandella a series of the defendant's biweeklies that had been recovered from the defendant's office. Incandella testified that the initials KI, which appeared on the biweeklies in the location where payroll officers typically place their initials, were not in her own handwriting. She also testified, after viewing several other biweeklies with initials purporting to be those of her coworkers, that those initials were not in the handwriting of her coworkers.

Diane Boisvert, another payroll officer at Mansfield Training School, also testified as a state's witness at trial. She testified that she also reviewed and initialed biweeklies and transposed the information onto time cards during the period in question. After viewing several of the defendant's biweeklies that had been recovered from the defendant's office, she testified that although the initials DB appeared at the top left hand corner of the biweeklies, the initials were not in her handwriting. She also testified that she was familiar with the handwriting of Incandella and other payroll officers, and that the initials that were purported to be theirs on several other biweeklies were not their initials. In addition, payroll officer Kellsey Bastis offered testimony substantially similar to that of Incandella and Boisvert.

The defendant contends that the state failed to sustain its burden of proof with regard to the element of

intent under General Statutes § 53a-139. The defendant asserts that if she did alter the documents in question, there was insufficient evidence to prove that she did so with fraudulent intent.

" 'Intent is a mental process which ordinarily can be proven only by circumstantial evidence.' *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). 'The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available.' *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980) . . . ." (Citation omitted.) *State* v. *Edwards,* supra. The defendant's intent in altering the biweeklies was a question for the jury. *State* v. *Edwards,* supra, 152.

The testimony of the various payroll officers that the initials on the biweeklies recovered from the defendant's office were not their own, in conjunction with the testimony of Devaux regarding the numerous instances of additional overtime claimed by the defendant on the biweeklies submitted to payroll, would allow a jury reasonably to conclude that the defendant had forged the initials of the payroll employees with the intent to defraud. Thus, we conclude that there was sufficient evidence from which the jury could reasonably have found the requisite intent proven, as well as the other elements necessary for a conviction of forgery in the second degree.

### III

Finally, the defendant claims that the trial court improperly admitted into evidence certain secondary documents in violation of the best evidence rule.

The following additional facts are relevant to this claim. Jody DiCarli, the payroll supervisor at Mansfield Training School, testified that beginning on March 24,

1989, the payroll department was instructed to photo-copy each biweekly received from each scheduler before returning the original biweekly to the scheduler. Over the defendant's objection, the trial court admitted into evidence exhibit J, consisting of copies of the photo-copies that were made by the payroll department. The state offered exhibit J to show that the defendant's biweeklies on file in the payroll department cor-responded with the information on the official payroll time cards, but did not match the biweeklies retrieved from the defendant's office. The documents in exhibit J contained the words "original Xerox."

The defendant asserts that the admission of these sec-ond generation copies violated the best evidence rule because the state offered no testimony or evidence that the original photocopies were unavailable, that a good faith effort was made to locate the original photocopies, or that the documents admitted into evidence were identical to the original photocopies. The defendant claims that, at a minimum, the court should have required the state to establish the unavailability of the original copies or held an evidentiary hearing to deter-mine whether the documents offered were identical copies of the original copies.

"As defined by our Supreme Court, the best evidence rule forces a party to produce the original writing, if it is available, when the terms of that writing are mate-rial and must be proved. *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 10, 513 A.2d 1218 (1986); see also C. McCormick, Evidence (3d Ed. 1984) § 230. 'The best evidence rule typically applies when attempting to prove the contents of " 'instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights.' " *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 10–11, quoting C. McCormick, supra, § 231.' " *Coelm* v. *Imperato,* 23 Conn. App. 146, 150, 579 A.2d 573,

cert. denied, 216 Conn. 823, 581 A.2d 1054 (1990). "The purpose of the [best evidence] rule is to secure the most accurate rendition of the terms and wording of a document . . . and to guard against 'fraud and imposition.' " C. Tait & J. LaPlante, Connecticut Evidence § 10.7.

Pursuant to General Statutes § 52-180 (c),[4] reproductions of business records are admissible as originals if the conditions set forth in General Statutes § 52-180 (a)[5] are satisfied. *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 5 Conn. App. 296, 299, 497 A.2d 1027 (1985); C. Tait & J. LaPlante, Connecticut Evidence § 10.10. "A copy of a business record is admissible under the statute if (1) the copy was made in the ordinary course of business and (2) the copy accurately reproduced the original on a durable medium." *State* v. *Crumble,* 24 Conn. App. 57, 69, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991).

---

[4] General Statutes § 52-180 (c) provides: "Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original."

[5] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

We note as a threshold matter that appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991). In this case, the original biweeklies would clearly be admissible as business records under § 52-180 (a) because (1) they were made in the regular course of business, (2) it was the regular course of Mansfield Training School to make such a record, and (3) they were made at the time of the act described in the report, or within a reasonable time thereafter. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 485, 586 A.2d 1157 (1991). Furthermore, copies of the original biweeklies would be admissible under § 52-180 (c). DiCarli testified that she examined exhibit J and that it correlated to the original time cards submitted to payroll by the defendant. She also testified that all of the hourly information in exhibit J was in the defendant's handwriting. This testimony provided a sufficient basis for the trial court to conclude that the copies "accurately reproduced the original on a durable medium." *State* v. *Crumble,* supra.

The question that we must resolve in this case is whether a photocopy of a photocopy is admissible under General Statutes § 52-180. There is no requirement in § 52-180 (c) that only an *original* copy may be introduced. Furthermore, our Supreme Court has stated that the statutory business record exception to the hearsay rule should be liberally construed. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.,* supra. We conclude that a second generation copy is also admissible under § 52-180 (c) as long as the original satisfies the conditions of § 52-180 (a). Therefore, the trial court did not abuse its discretion in admitting the second generation copies of the biweeklies. The trial court properly determined that any doubt about the accuracy of the

documents went to the weight to be afforded them by the jury rather than to their admissibility. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 387, 461 A.2d 422 (1983).

The judgment is affirmed.

In this opinion the other judges concurred.