[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for collection of rent. The parties entered into a lease agreement for two years effective August 1, 1993. The defendant tenant vacated the premises and stopped paying rent in approximately August, 1994. The premises were leased to a new tenant in April, 1995. The plaintiff seeks the rental amounts due under the rental contract for the intervening period, as well as a minor amount of cleaning expenses.
The issues presented in the two session hearing, as developed by the briefs of the parties, are primarily actual. I have carefully read the briefs, portions of the transcript and my own notes, and I have reached the following conclusions.
I. The allegations of the complaint are proved, except as to the precise date of vacating. I should note that although evidence of damages for cleaning the premises was introduced, there was no pleading alleging such damage. In any event, I do not find that the rather minimal amount spent on cleaning was proved to be for other than normal wear and tear.[1]
II. None of the special defenses other than the third special defense were proved.
III. The third special defense alleged that there was a modification of the written lease in July, 1994, which provided that the defendant could vacate the premises early, and the security deposit would be forfeited as consideration. Although detailed factual discussion is not necessary, some explanation may be useful.
Although the defendant was the only named tenant, two other people, Jennifer Pond and Javier Quinonez, lived at the premises CT Page 2667 with the acquiescence of the landlords. The other two tenants were apparently contributing to the rent. In the late spring and early summer of 1994, it became clear to Jennifer that she would have to vacate in order to help take care of her ailing mother, who had multiple sclerosis. Presmarita, the tenant who had signed the lease, also had the prospect of a new job in Fairfield County; this contingency, in combination with the loss of Jennifer's contribution to the rent, caused him to believe that he would not be able to continue living in the premises. Apparently Jennifer discussed the problem directly with Heather Mulkey, one of the landlords; Heather was reported to be sympathetic.[2]
The specific idea of being excused from further rent in return for forfeiting the security deposit was apparently not discussed with her. Vinick also testified that he had been made aware of the problem and also was sympathetic, though he denies any recollection of any specific agreement. Communication was somewhat difficult because, at all times relevant to this case, Vinick and Mulkey were living in London, England. The real estate agent, Sue DeJuan, also was generally aware of the problem.
The crux of the defense is a letter written by Presmarita and sent to Vinick in July, 1994; a copy has been admitted as Exhibit A. The letter states that he and Jennifer will be leaving as of October 1, 1994, and suggests that by forfeiting the security deposit they could "consider the lease fulfilled to its obligation . . . . Please sign and return to me acknowledging your O.K." The defendant offered into evidence a copy of the original letter with Vinick's signature on it. The signature, along with the rest of the letter, was not original. Jennifer and Javier both testified that they were at the premises when the letter arrived with Vinick's signature; they called Presmarita at work to read it to him. The consensus of the three residents was that only a copy had been returned to them, that is, Premarita never had a document with Vinick's original signature on it.
Vinick denied ever receiving the letter and, by the same token, denied signing the letter. He testified that although he had been made aware of the difficulties of the tenants, he never excused the payment of rent in return for the forfeiting of the security deposit.
The preliminary issue is whether the best evidence rule prohibits the consideration of Exhibit A, the letter in question. "McCormick defines the (best evidence rule) thus: `[I]n proving the terms of a writing, where the terms are material, the CT Page 2668 original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.' (citation omitted) . . . . (the rule) has tended to become `now chiefly confined to the rule that the terms of a document must be proved by the production of the document itself; unless production is not feasible' (citation omitted) . . . . `[T]he rule is not intended as an exclusionary one; it is merely a rule of preference operating as a special exception to the rules of testimonial preference.' (citation omitted)." Brookfieldv. Candlewood Shores Estates, Inc., 201 Conn. 1, 10-12 (1986); see also State v. Comollo, 21 Conn. App. 210, 218-19 (1990). "[T]he best evidence rule forces a party to produce the original writing, if it is available, when the terms of that writing are material and must be proved." State v. Pearl, 28 Conn. App. 521,533 (1992). The Federal Rules of Evidence, relied upon by the plaintiff somewhat more specifically state as a general proposition that the original of a document is to be produced if the content is to be proved, unless the original is lost, not obtainable or in the possession of the opponent.
In the circumstances of this case, it is clear that the best evidence rule does not prohibit the introduction of the exhibit. The testimony of the defendants witnesses was that they never had an original; if the testimony is believed, it would be possible for Vinick to have received the original, signed it, copied it, and sent back the copy. Similarly, if there had been an original signed document and it was benignly lost, the best evidence rule would not prohibit introduction of the copy. If, on the other hand, the original was not produced because of some sort of tampering by the defendant, then the best evidence rule would prohibit introduction of the copy if the terms of the document were material to the resolution of the matter. The absence of the original may well affect the weight to be accorded to the evidence, and, in the circumstances of this case, the reasoning might be somewhat circular: if the court were to find that the document had been intentionally altered or entirely fabricated, then it may well not be admissible; but, of course, it would in that case tend to defeat the defendant's case on the merits.
The critical issue, then, is whether the letter is what it purports to be or whether it is a fabrication. After considerable thought, I find that it is somewhat unlikely that the three witnesses on the defendants side would intentionally make up an exhibit, and indeed commit a criminal offense, in these circumstances. The three witnesses, though not without some CT Page 2669 contradictions, were generally credible, and their discussions about the problems with staying on the premises were confirmed by others: they were not trying to conceal the difficulties. Although Vinick was also generally a credible witness, it is conceivable that his recollection was faulty as to that fact. I find the third special defense proved.
IV. The "setoff" claims that because the security deposit was not returned, double damages should be awarded to the defendant pursuant to § 47a-21 of the General Statutes. In light of the finding of the special defense, in which the defendant himself agreed to forfeit the security deposit, this claim is without merit. There also was no evidence that the defendant had supplied the landlord with a forwarding address.
Judgment may enter for the defendant.
Beach, J.